1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONITA C. ROTHERHAM,<br><br>                                    Plaintiff,<br>    vs.<br><br>AMERICAN RED CROSS; SAN DIEGO/IMPERIAL COUNTIES CHAPTER OF THE AMERICAN RED CROSS,<br><br>                                   Defendant. | CASE NO. 04CV1172 BEN (LSP)<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. Nos. 58, 71] |

## I. INTRODUCTION

Plaintiff Donita C. Rotherham ("Rotherham" or "Plaintiff") brings this action against Defendants American Red Cross ("Red Cross") and San Diego/Imperial Counties Chapter of the American Red Cross ("San Diego Chapter" or the "Chapter") (collectively "Defendants") alleging breach of employment contract and other related causes of action. Defendants move for summary judgment on the basis that Rotherham was an at-will employee, and regardless, any termination was for good cause. Plaintiff opposes the motion.

## II. FACTS

Plaintiff was the CEO of the San Diego Chapter of the American Red Cross. She began her employment with the Red Cross in 1971 when she was hired into Nursing and Health Services

at the Chapter. (Pl. Facts ¶ 59)[1]. In 1972, she was promoted to Director, Nursing and Health Services, and held that position until 1979. (*Id.* at ¶ 61). Over the course of her employment, Rotherham participated in the "Career Development Program" designed to assist employees further their careers. That program included educational incentives, which Rotherham used beginning in 1974 to obtain her M.S. degree in Community Health from Loma Linda University. (*Id.* at ¶¶ 62-66). In 1981, Rotherham became Group Manager/Director of Nursing and Health Services. While serving in that position, the Chapter Manager arranged for Rotherham to enroll in the Red Cross's National Career Development Program for management. (*Id.* at ¶74). Rotherham became the Chapter Manager in 1983, then the Executive Director, a title which later was changed to CEO. (*Id.* at ¶¶ 77, 81, 83). The Chapter grew substantially under her leadership, and by 2002 had become the third largest chapter in the country. (*Id.* at ¶ 83). Rotherham was evaluated annually, and until the period at issue in this action, the results were consistently positive.

On January 3, 2001, a fire broke out in the Alpine/Jamul area of San Diego County (the "Alpine Fire"). (Def. Facts at ¶ 10).[2] The San Diego Chapter responded with various forms of disaster assistance. The Chapter raised approximately $400,000 in relation to disaster relief for the Alpine Fire. (Def. Facts at ¶ 11). Concerns began to be raised that the money raised from the Alpine Fire was not being spent solely on disaster relief in the Alpine community. On February 2, 2001, County Supervisor Dianne Jacob sent a letter to the Chapter asking that all funds raised during the Alpine Fire be spent in the Alpine community. (Pl. Facts at ¶98). A few weeks after that, John A. Baddour, a victim of the Alpine Fire, sent a letter to the California Attorney General complaining about the Chapter's response to the fire and its solicitation practices. (Def. Facts at ¶ 12). Beginning in March 2001, the local and national media began to scrutinize the Chapter's response to the Alpine Fire, and its handling of funds raised. (Pl. Facts at ¶99; Def. Facts at ¶ 13). Plaintiff met with Supervisor Jacob on May 10, 2001 to discuss what the Red Cross does in times

---

[1]References to "Pl. Facts" are to Plaintiff's Separate Statement of Undisputed and Disputed Material Statement of Fact [*sic*] in Opposition to Defendants' Motion for Summary Judgment.

[2]References to "Def. Facts" are to Defendants American Red Cross and San Diego/Imperial Counties Chapter of the American Red Cross' Separate Statement of Undisputed Facts in Support of Motion for Summary Judgment.

1  of a disaster, how the Red Cross handles funds, and the overall role of the San Diego Chapter.  (Pl.
2  Facts at ¶ 101).  In addition, Rotherham raised the issue with Jacob of the difficulty the Chapter
3  was experiencing getting clients to respond to contact from Red Cross caseworkers.  As a follow-
4  up to that meeting, on June 25, 2001 Plaintiff and Jacob met with victims of the Alpine fire and
5  their families to discuss the San Diego Red Cross's response to the fire.  (Pl. Facts at ¶ 102).  The
6  meeting rapidly degenerated into what was characterized by the media as a no-holds-barred gripe
7  session.  (Def. Facts at ¶ 14).

8        Plaintiff's relationship with Supervisor Jacob and the media continued to deteriorate.  On
9  August 8, 2001, Jacob sent a letter to the President of the American Red Cross, Dr. Bernadine
10 Healy, complaining about Rotherham and the Chapter's handling of the Alpine Fire.  (*Id.* at ¶ 16).
11 Healy responded by ordering a special review of the Chapter by the Red Cross headquarters.  (*Id.*
12 at ¶ 17).  Internal auditors conducted the review in August 2001, and a special report was issued
13 by the American Red Cross on September 12, 2001.  (*Id.* at ¶ 18).  On November 1, 2001, without
14 the approval of the American Red Cross, the public relations firm hired by the San Diego Chapter
15 released an "Executive Summary" of the report.  (*Id.* at ¶ 19).  Subsequently, the San Diego Union
16 Tribune obtained a copy of the full report, which it found to be substantially different from the
17 summary released by the Chapter.  (*Id.* at ¶ 21).  The media firestorm continued, and by December
18 2001, the San Diego Union Tribune called for Rotherham's resignation on the basis of the
19 Chapter's credibility problem and her inability to resolve it.  (*Id.* at ¶ 13).

20       Also in December 2001, a Blue Ribbon Committee comprised of local citizens not
21 affiliated with the Chapter was formed to review Chapter operations.  (*Id.* at ¶ 26).  The Blue
22 Ribbon Committee recommended that the Chapter's leadership, including Rotherham, be removed.
23 Several leaders of the Chapter resigned in response to the report.  (*Id.* at ¶ 27, 31).  In addition, two
24 separate government investigations were launched - one by the California Attorney General into
25 issues related to Plaintiff's compensation, the Chapter's management of funds and American Red
26 Cross's solicitation of funds; and the second a *qui tam* action by the County Counsel's office
27 relating to alleged fraud in the Chapter's delivery of transportation services to the City and
28 County.  (*Id.* at ¶¶ 28-29).  The Blue Ribbon Committee subsequently issued its final report in

1  June 2002, in which it noted the resignations of Chapter leadership other than Rotherham, and
2  recommended that she be removed. (*Id.* at ¶ 31). Rotherham was fired in June 2002.

## III. DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). If the moving party meets this burden, the opposing party must set forth specific facts showing that a genuine issue remains for trial. Fed. R. Civ. P. 56(e).

"The moving defendants need provide nothing more than a reference to those materials on file in the case which support the movant's belief that there is an absence of any genuine issue of material fact." *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990). An adverse plaintiff, however, must "offer evidence sufficient to raise a genuine issue of fact on an issue on which plaintiff has the burden of proof." *Id.* "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Triton Energy Corp. v. Square D Co.,* 68 F.3d 1216 (9th Cir. 1995) (internal citation omitted).

An issue of fact is only genuine if it can reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby*, 477 U.S. at 250-51. "A mere scintilla of evidence supporting the nonmoving party's position is insufficient; there must be evidence on which a jury could reasonably find for the nonmoving party." *Rivera v. Phillip Morris, Inc.,* 395 F.3d 1142, 1146 (9th Cir. 2005). "The substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby,* 477 U.S. at 248.

    A.    *Breach of Contract Claim*

        1.    *At will employment*

Defendants move for summary judgment on this claim on the basis that Rotherham was an

1 at will employee and had no contract. Rotherham argues that she had an implied contract. The

2 California Labor Code creates a presumption that all employment is at will. Section 2922 states:

3 "An employment, having no specified term, may be terminated at the will of either party on notice

4 to the other." Cal. Labor Code § 2922.

5       The Red Cross presents substantial evidence to support its claim that in addition to the

6 presumption under California law of at will employment, the organization is by its own terms an at

7 will employer. First, Rotherham herself promulgated a Personnel Policies and Practices Manual,

8 dated September 26, 1997 with revisions dated January 2000, which states on the first page, "[t]his

9 handbook applies to all employees of the San Diego/Imperial Counties Chapter of the American

10 Red Cross including introductory, full-time, part-time, per diem, temporary, exempt and non-

11 exempt except where otherwise stated. *This handbook supersedes all previous employment*

12 *policies, whether they are written or oral, express or implied.*"   (Weimann Decl.[3] Ex. A)

13 (emphasis added). The employee handbook from 1966 Rotherham attaches to her declaration is

14 therefore irrelevant.

15       In the very first line under the heading "Employment Information", the Policies and

16 Practices manual states:

17 **Red Cross Is An At Will Employer**

18 Employment at the Chapter is employment at will. Employment at will means that
the employment relationship may be terminated at the will of either the employer or
19 the employee. Employment may be terminated with or without cause at any time
by you or the Chapter. Terms and conditions of employment with the Chapter may
20 be modified at the sole discretion of the Chapter with or without cause and with or
without notice. Other than the Chief Executive Officer, no one has the authority to
21 make any agreement for employment other than employment at will or to make any
agreement limiting the Chapter's discretion to modify terms and conditions of
22 employment. Only the Chief Executive Officer has the authority to make any such
agreement, and then only in writing. No implied contract concerning any
23 employment related decision or term and condition of employment can be
established by any other statement, conduct, policy or practice.
24

25 (Weimann Decl. Ex. A). Plaintiff cites to no evidence which would show this statement did not

26 apply to her. She presents no interpretation of the words which would somehow hint at an

27 intention by the Red Cross to exclude her from its blanket policy (promulgated by Rotherham

---

28      [3]Reference to "Wiemann Decl." is to the Declaration of Jeffrey C. Wiemann dated August 11, 2006.

herself) that all employment was at will. As stated above, the Policies and Practices manual requires any modification of the at will relationship to be in writing. Rotherham does not present any such writing, but rather relies on an "implied contract" theory. This ignores the very next statement of the manual she herself promulgated, which states that "[n]o implied contract concerning any employment related decision or term and condition of employment can be established by any other statement, conduct, policy or practice."

Even if the Court were to ignore the plain language of the Chapter manual and presume it does not apply to Rotherham, it would not matter, because the American Red Cross's Board of Governors Policy Manual also provides that Rotherham's employment is at will. The Board of Governors is the governing body for the American Red Cross, and as undisputed by Rotherham, it sets policy on a nationwide basis. Its policy manual provides at Section 2.17.4:

> The Regional Executive Officer may, after consultation with the chairman of a Chapter, require the Chapter to terminate the services of the Chapter manager, with or without cause. Each Chapter shall insure that no contractual undertakings are made in favor of the manager that limit or impair such right of termination.

(Dollarhide Decl. Ex. B)[4]. This provision allowing for removal of the Chapter manager (aka the CEO) without cause clearly puts Rotherham on notice that her employment was at will and did not require cause to terminate.

Defendants have met their burden of showing that no material issue of fact exists as to whether Rotherham was an at will employee. Once the moving party has satisfied its burden, it is entitled to summary judgment if the nonmoving party fails to designate, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotation omitted). As the plaintiff in this case, the burden falls on Rotherham to show not just any question of fact, but rather "evidence from which a reasonable jury could return a verdict in [her] favor." *Triton Energy Corp. v. Square D Co.,* 68 F.3d at 1221. The Court would have expected to find citations to this evidence in Plaintiff's Memorandum of Points and Authorities in Opposition to the Motion for Summary Judgment. But such citations were conspicuously absent, limited to one quotation

---

[4]Reference to "Dollarhide Decl." is to the Declaration of Mary C. Dollarhide in Support of Defendants' Motion for Summary Judgment dated August 14, 2006.

1  from a deposition, without context or explanation of its relevance. Rather than specifically
2  designate the evidence which might support her claims, Plaintiff chose to submit a 235 page
3  Separate Statement of Disputed and Undisputed Facts. This Separate Statement does not indicate
4  the relevance of any of these purported facts to any particular claim. After reviewing this hefty
5  document, the Court is no closer to seeing facts in support of Rotherham's claim than it was
6  before.

7  Rotherham argues that she had an implied contract, but the evidence is to the contrary.
8  "While California courts will look to factors such as employer personnel policies, longevity of
9  service, and assurances of continued employment in determining whether the employer's conduct
10 'gave rise to an implied-in-fact contract,' they have been careful not to interpret such factors too
11 liberally." *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1138 (9th Cir. 2002) (quoting *Guz v. Bechtel
12 National, Inc.*, 24 Cal. 4th 317, 337 (2000). In this case, Rotherham relies primarily on her length
13 of service to the San Diego Chapter, as well as positive annual reviews. But "longevity, raises and
14 promotions without specific words or conduct by the employer negating at-will employment, will
15 not suffice to raise a triable issue of fact." *Moreau v. Air France*, 356 F.3d 942, 953 (9th Cir.
16 2004) (citing *Guz v. Bechtel Nat'l, Inc.,* 24 Cal. 4th at 338, 341-42). It could not logically be
17 otherwise - longevity, raises and promotions are their own rewards, as well as the result of a
18 mutually beneficial employment relationship. If additionally these things independently created an
19 implied in fact contract, no employer could reward a good employee without also sacrificing its at
20 will status. Surely this is not the policy the California Legislature intended to promote.
21 Rotherham fails to cite to any admissible evidence of "specific words or conduct by the employer
22 negating at will employment". *Moreau v. Air France*, 356 F.3d at 953. Defendants are therefore
23 entitled to summary judgment on Rotherham's breach of contract claim.

24  2.  *Good cause*

25  Although the Court finds defendants to be entitled to summary judgment on the basis that
26 Rotherham was an at will employee, they have also shown there is no genuine issue of material
27 fact regarding good cause for her termination. The Court may rule on whether good cause existed
28 for termination of employment on a motion for summary judgment. *See Hoy v. Sears, Roebuck &*

*Co.*, 861 F. Supp. 881, 887 (N.D. Cal. 1994). "The proper inquiry to determine good cause will consider whether the discharge was within the bounds of the employer's discretion or instead was trivial, capricious, unrelated to business needs or goals, or pretextual." *Joanou v. Coca-Cola Co.*, 26 F.3d 96, 99-100 (9th Cir. 1994) (citing *Wilkerson v. Wells Fargo Bank, Nat'l Ass'n*, 212 Cal. App. 3d 1217 (1989)). "Courts must take care not to interfere with the legitimate exercise of managerial discretion." *Id.* (internal quotation omitted).

Defendants claim they terminated Rotherham because she had lost the public's trust and confidence, and as the head of a charitable organization dependent on fundraising, this rendered her ineffectual. Additionally, several government investigations commenced on her watch, exacerbating the public's lack of confidence. The media firestorm surrounding Rotherham and the Chapter illustrate the depth of antipathy that had formed in the community. 60 Minutes aired a segment highly critical of the Chapter's handling of the Alpine funds, not to mention the series of articles in the San Diego Union Tribune culminating in a call for Plaintiff's ouster. (Getchell Decl. Exs. A - AZ). Without taking into account the veracity of the substance of the media reports, the fact of their very existence shows the deep well of public mistrust that had formed around Rotherham, the Chapter and its Board.

"When it is clear that an employee is terminated on the grounds of poor performance, where 'there [is] no hint that the asserted reason for termination was capricious or unrelated to business needs or goals, or pretextual... a jury should not be allowed to decide the correctness of business judgment in terminating' the employee." *Hoy v. Sears, Roebuck & Co.*, 861 F. Supp. at 887 (quoting *Moore v. May Dept. Stores Co.,* 222 Cal. App. 3d 836 (1990)). Rotherham once again cites to no specific facts disputing the evidence put forward by the Red Cross of its good cause to terminate her - namely, poor performance. It is the definition of poor performance for the leader of a charitable organization to lose the trust of the public and be unable to raise funds. Similarly, no reasonable finder of fact could determine that the Red Cross's decision to terminate Rotherham was "trivial, capricious, unrelated to business needs or goals, or pretextual" after several government inquiries commenced into the practices of the Chapter under her leadership, and into Rotherham's own compensation. *Joanou v. Coca-Cola Co.*, 26 F.3d at 99-100.

Rotherham weakly argues that her firing was pretextual because she was made a scapegoat for the alleged mishandling of funds raised for the 9/11 Liberty Fund. This argument is a non-starter. The bulk of the controversy surrounding Rotherham began before September 11, 2001. In fact, the report from the special internal audit of the Chapter was finalized on September 12, 2001, having already been completed before the 9/11 attacks. No reasonable finder of fact could find Rotherham's termination was pretextual on that basis.

In addition to the Court's determination that as a matter of law, Rotherham was an at will employee, Defendants are also entitled to summary judgment on the breach of contract claim because there is no issue of material fact as to whether they had good cause for terminating her.

3.   *Implied covenant of good faith and fair dealing*

Rotherham's separate claim for a breach of the implied covenant of good faith and fair dealing must fail. The implied covenant is a concept that has arisen to prevent one party to an agreement from frustrating the other party from receiving the benefit of the bargain it has struck. It does not create a separate tort, but exists only in relation to a contract, be it written or implied. *See Guz v. Bechtel*, 24 Cal. 4th 317, 352 (2000) ("In the employment context, an implied covenant theory affords no separate *measure of recovery*, such as tort damages.) (citing *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 682-700 (1988)). When the only bargain that has been struck is for at will employment, a claim for breach of the covenant of good faith and fair dealing simply will not stand on the basis that the employer lacked good cause to discharge. At will employment means that the employer can terminate the employment relationship for any reason at any time, including arbitrarily and capriciously. The covenant of good faith and fair dealing does not impose any additional substantive terms. *Guz v. Bechtel*, 24 Cal. 4th at 350. Defendants are therefore entitled to judgment as a matter of law on the claim for breach of the covenant of good faith and fair dealing.

B.   *Fraudulent Inducement*

Plaintiff also raises a claim for fraudulent inducement. Under California law, "the elements of fraud ... are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce

1  reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Superior Court*, 12 Cal. 4th
2  631, 638 (1996) (internal quotation and citation omitted).  Fraudulent inducement is simply a
3  subspecies of fraud.  *Id.*

4   It is somewhat unclear what Rotherham asserts as the basis for her fraudulent inducement
5  claim.  The First Amended Complaint ("FAC") refers to the misrepresentations as the Defendants'
6  alleged promises of continued employment, which they knew to be false because they considered
7  her an at will employee.  (FAC at ¶¶ 76 - 79).  On the other hand, Plaintiff's Memorandum in
8  Opposition to the instant motion and her Declaration appear to base this claim on events and
9  conversations that allegedly occurred in the late 1970's and early 1980's regarding other job
10 opportunities Plaintiff may have had.  (Pl. Mem.[5] at 14).  Rotherham has failed to provide any
11 evidence to support a claim on the basis of either of these theories.  The Court has already found
12 that Rotherham has proffered no evidence that she was ever told by the Red Cross that she was
13 anything other than an at will employee.  Therefore, there were no misrepresentations regarding
14 her employment status, no scienter, and Rotherham could not have justifiably relied on such
15 statements.

16   Her theory regarding job opportunities she may have had in the late 1970's and early 1980's
17 is similarly flawed.  Rotherham claims that in 1977, while still in graduate school (being paid for
18 by the Red Cross), it came to the attention of the Chapter Manager that she was being recruited by
19 the Public Health Department.  He told her that the Red Cross had invested in her and helped pay
20 for her education, therefore it expected her to put that education to use there.  In the early 1980's,
21 she was asked to do some part-time teaching at the San Diego State University (SDSU) nursing
22 program.  She spoke to Bill Swindell, the Chapter Manager at the time about the offer.  He
23 expressed displeasure at the idea of her taking on the position, and instead offered to enroll her in
24 the Red Cross's National Career Development program for management to facilitate her career
25 advancement at the Red Cross.  (Rotherham Decl. ¶ 25).  He then arranged for her enrollment in
26 the program, which did in fact lead to her advancement at the Chapter.  (Rotherham Decl. ¶ 26).
27
28    [5]References to "Pl. Mem" are to Plaintiff's Memorandum of Points and Authorities In Opposition to Defendants' Motion for Summary Judgment.

A fraud claim requires first that there be a misrepresentation. Assuming the events to have occurred as Rotherham describes, neither one involves a misrepresentation. The first was a statement by her employer that the organization expected that if it paid for her education, it would receive the benefit thereof. Rotherham was not tricked into staying - the Red Cross did help pay for her graduate degree. The second incident also fails to constitute a misrepresentation. The Chapter Manager told Rotherham he didn't want her taking on a second job, and instead offered to enroll her in a career advancement program. She accepted, and he did exactly what he promised to do. Fraudulent inducement requires not just inducement, but fraud. Incidents of promises made and kept hardly fit the bill. Rotherham fails to meet her burden on even the first element of the claim. The Court grants summary judgment to Defendants on the fraudulent inducement claim.

### C. Claim for Indemnification Under California Labor Code § 2802

Plaintiff brings a claim for indemnification under California Labor Code § 2802 for the costs incurred by her separate retained counsel in relation to the investigations of the Chapter by the Attorney General and the District Attorney. The relevant portion of the statute provides:

> (a) An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

Cal. Labor Code §2802. Defendants argue that any expenditures by Rotherham for separate counsel were unnecessary, and therefore not covered by the statute. Factors a court may consider in determining whether the expenditure was necessary include: (a) whether the employer has already agreed to provide counsel; (b) the competency and experience of counsel provided by the employer; (c) any time constraints requiring the employee to take unilateral action in selecting and hiring counsel; (d) the complexity and difficulty of the litigation against the employee in relation to the ability and capacity of the employer-provided counsel; (e) whether there are any conflicts between the employer and the employee; (f) the past history of the relationship between the employer and the employee; and (g) the nature of any problems arising in the attorney-client relationship and the reasons behind those problems. *Grissom v. Vons Companies, Inc.*, 1 Cal. App. 4th 52, 59 (Cal. Ct. App. 1991).

1    It is undisputed that the various governmental investigations were against the Chapter, not
2 against Rotherham personally. (Dollarhide Decl. Ex. A). The factors discussed above all presume
3 an actual action against the employee in considering the necessity of the employee retaining
4 separate counsel. Neither the *Grissom* case cited above, nor *Douglas v. Los Angeles Herald
5 Examiner*, 50 Cal. App. 3d 449 (1975), relied upon by Plaintiff, contemplate a situation where an
6 employee seeks indemnification for separate counsel when it is only the employer who is subject
7 to legal action. Rotherham has failed to provide any evidence that in spite of the fact that it was
8 the Chapter being investigated, she required separate counsel. Defendants are therefore entitled to
9 summary judgment on this claim.

   D.    *Declaratory Relief*

11   "Declaratory relief ... is in the nature of equitable relief, and equitable relief will not be
12 granted if there is a plain, complete, speedy and adequate remedy at law." *Andal v. City of
13 Stockton*, 137 Cal. App. 4th 86, 91 (2006). Declaratory relief under federal law is similarly of an
14 equitable nature. But here, more important than the issue of whether Plaintiff has an adequate
15 remedy at law is that the Court has determined that no reasonable finder of fact could determine
16 that she is entitled to a remedy at all. Declaratory relief is therefore irrelevant. The Court grants
17 summary judgment to Defendants on the declaratory relief claim.

### IV. CONCLUSION

19   For the reasons stated above, the Court grants Defendants' Motion for Summary Judgment
20 as to all claims.

21   IT IS SO ORDERED.

23 DATED: March 5, 2007

   Hon. Roger T. Benitez
   United States District Judge